642 P.2d 214

**In re ADOPTION OF Jeannette Marie BRADFIELD, a Minor Child,**

**Dr. Arthur SMITH and Dr. Boyce Berkel, Plaintiffs-Appellees,**

**v.**

**Jean Audrey BRADFIELD, Defendant-Appellant.**

**No. 5379.**

Court of Appeals of New Mexico.

March 2, 1982.

Fred Tharp, Jr., Clovis, Leesfield & Blackburn, Daniel & Hicks, Miami, Fla., for defendant-appellant.

Alan Konrad, Miller, Stratvert, Torgerson & Brandt, Albuquerque, for plaintiffs-appellees.

## OPINION

DONNELLY, Judge.

Appellant, Jean Audrey Bradfield appeals from an order vacating a final decree of adoption which had permitted her to adopt her granddaughter. We affirm.

The dispositive issue raised on appeal is whether a court has jurisdiction to enter a final decree of adoption posthumously by decreeing that the judgment be entered nunc pro tunc.

Appellant, a widow, initiated proceedings on March 14, 1979, in the District Court of Curry County, New Mexico, seeking to adopt her granddaughter, Jeanette Bradfield. In her petition, appellant alleged that the child's mother, Judith Ann Bradfield, was unmarried at the time of the child's birth, that the natural mother had abandoned the child, the mother's whereabouts were unknown, and that the father of the child was never determined.

During the pendency of adoption proceedings, petitioner requested that the court terminate the parental rights of the natural mother and waive the necessity of the mother's consent to the adoption. A hearing was held on April 30, 1979, on appellant's motion to dispense with parental consent. Notice of the hearing was given by publication. After the hearing, the court found that the child's natural mother had not entered her appearance in the adoption proceeding and that the mother had been properly served therein by publication, since her whereabouts were unknown. The court further found that the natural mother had abandoned the child and that the natural father had never been identified.

Subsequent to the entry of the court's order dispensing with the consent of the natural mother and father to the adoption, but prior to entry of the final decree, the child died on December 25, 1979. Appellant

alleges that the minor child was born on October 16, 1975, at Goldsboro, North Carolina, and remained in appellant's custody until her death. Appellant alleged that she and the minor child were legal residents of Curry County for more than six months preceding the filing of the adoption proceedings.

On July 25, 1980, appellant initiated a wrongful death action in Florida against appellees, Dr. Arthur Smith and Dr. Boyce Berkel, and others, alleging that the child's death was proximately caused by medical malpractice. Appellant filed the Florida action as personal representative and surviving parent of Jeanette Bradfield, deceased. The Florida court refused to hold the adoption valid because of the New Mexico District Court's vacation of the adoption decree and its lack of subject matter jurisdiction to enter the decree.

The New Mexico final decree of adoption of Jeanette Bradfield, a minor, was entered by the court nunc pro tunc on June 12, 1980. In May, 1981, appellees moved the trial court to vacate the final decree of adoption, and following a hearing, the District Court entered an order on July 2, 1981, vacating the final decree.

Appellant contends that the trial court properly entered the final decree of adoption nunc pro tunc after the death of the minor child and that the court erred in subsequently vacating the decree. Appellant argues that entry of a final judgment nunc pro tunc is appropriate where the cause was ripe for judgment before the death of the child sought to be adopted, and the only remaining judicial act to be performed is a formality or is ministerial in nature.

Appellees assert in response that the trial court did not have subject matter jurisdiction to initially enter the final decree of adoption in this case, and that the provisions of the Adoption Act were not followed in obtaining the decree of adoption in the first instance, thereby mandating that the trial court vacate its original decree.

The term nunc pro tunc is a Latin phrase meaning "now for then" and "used to express that a thing is done at one time which ought to have been performed at another." Bouvier's Law Dictionary 2385 (3rd Rev. 1914). In *Mora v. Martinez*, 80 N.M. 88, 451 P.2d 992 (1969), the court held that:

> [N]unc pro tunc has reference to the making of an entry now, *of something which was actually previously done*, so as to have it effective as of the earlier date. It is not to be used to supply some omitted action of the court or counsel, but may be utilized to supply an omission in the record of something really done but omitted through mistake or inadvertance. *State v. Hatley*, 72 N.M. 377, 384 P.2d 252 (1963).

*See also Secou v. Leroux*, 1 N.M. 388 (1866).

■ Although in some instances courts have entered a final order nunc pro tunc following the death of a party, this procedure is only used when substantial justice requires. *See Borer v. Chapman*, 119 U.S. 587, 7 S.Ct. 342, 30 L.Ed. 532 (1887); *Chester v. Graves*, 159 Ky. 244, 166 S.W. 998 (1914); *Brooks v. Brooks*, 52 Kan. 562, 35 P. 215 (1894); *Toledo Trust Co. v. National Bank of Detroit*, 50 Ohio App.2d 147, 362 N.E.2d 273 (1976). As held in *Cuebas y Arredondo v. Cuebas y Arredondo*, 223 U.S. 376, 32 S.Ct. 277, 56 L.Ed. 476 (1911), a decree nunc pro tunc presupposes a decree allowed or ordered which was not entered through inadvertance of the court, or a decree under advisement when the death of a party occurred.

■ In the instant case, the court was without jurisdiction to enter the final decree of adoption after the death of the minor child sought to be adopted, and the court's subsequent order vacating its initial decree was proper. After the hearing before the trial court on April 30, 1979, regarding termination of parental rights, no subsequent notice was given of the time and place for any final hearing seeking the entry of the final decree of adoption. Although the trial court heard and granted appellant's motion waiving the necessity of a home study investigation required by § 40–7–13, N.M.S.A. 1978 (Supp.1981), no

notice of final hearing on appellant's adoption petition was given to the appropriate state agency as required by § 40–7–11(B), N.M.S.A.1978.

◼ Adoption proceedings are special statutory actions whereby the status or legal relationship of parent and child is established. *See Hahn v. Sorgen,* 50 N.M. 83, 171 P.2d 308 (1946). Adoption actions, unknown at common law, are solely statutory in nature and jurisdictional requirements of the statutes must be strictly followed. *Mayer v. Dept. of Public Welfare,* 75 N.M. 201, 402 P.2d 942 (1965); *Barwin v. Reidy,* 62 N.M. 183, 307 P.2d 175 (1957); *In re Adoption of Doe,* 89 N.M. 606, 555 P.2d 906 (Ct.App.), *cert. denied,* 90 N.M. 7, 558 P.2d 619 (1976); *In re Adoption of Doe,* 87 N.M. 253, 531 P.2d 1226 (Ct.App.), *cert. denied,* 87 N.M. 239, 531 P.2d 1212 (1975).

◼ An integral facet of a valid adoption is the requirement that personal jurisdiction must first be acquired by the court over the parties seeking to adopt the child, over the child, and over the parents of the child, and any guardian or agency having custody or control of the child. *See In re Hampton's Estate,* 55 Cal.App.2d 543, 131 P.2d 565 (1942).

The final decree of adoption initially entered by the trial court was apparently entered without a formal hearing or the appearance of appellant as contemplated by § 40–7–14(C), N.M.S.A.1978. The record is silent as to whether the trial court excused appellant's appearance at the time of entry of the decree of adoption or whether the court was advised that the child sought to be adopted was then deceased.

◼ A common objective underscoring the principal provisions of the Adoption Act is the furtherance of the best interests and welfare of each child sought to be adopted, and correlatively the protection of the rights of the natural parents or guardian of the child. *Nevelos v. Railston,* 65 N.M. 250, 335 P.2d 573 (1959). The paramount issue in an adoption proceeding, however, is the welfare of the child. *Gutierrez v. Dept. of Public Welfare,* 74 N.M. 273, 393 P.2d 12 (1964); *Barwin v. Reidy, supra.*

◼ The granting of an adoption where the child sought to be adopted has died prior to the final hearing has no effect, as the death deprives the trial court of jurisdiction. The rationale stated by the court in *In re Estate of Freud,* 331 N.Y.S.2d 224, 69 Misc.2d 906 (Sur.Ct.1972), aptly recites the rule which should govern in the instant case:

> The fundamental purpose of an adoption is to establish the relationship of parent and child between living human beings. The proceeding is distinctly personal in nature and, therefore, abates upon the death of either the adoptive parent or the child. The 'adoption does not become final until the order of the court * * *' and can never become final if either the adoptor or adoptee dies before the order is signed. Any adoption order made thereafter, whether purporting to speak *nunc pro tunc* or not, is necessarily void.

Similarly, *Korbin v. Ginsberg,* 232 So.2d 417 (Fla.Ct.App.1970), held that a judgment or decree of adoption establishes the legal relationship of parent and child, and "is a personal relationship created between one capable of adopting and one capable of being adopted, and it necessarily requires that both the adopting parent and the adopted child be living at the time such relationship comes into being by judicial decree."

In support of her contention that the entry of the decree nunc pro tunc was proper, appellant cites several cases from other jurisdictions in which the courts upheld the right of a trial court to enter a final judgment after the death of a party thereto. Our examination of these cases reveals that they are factually and legally distinguishable from the case at bar, and with the one exception of *Williams v. Nash,* 247 Ark. 135, 445 S.W.2d 69 (1969), they do not deal with adoption proceedings. In *Nash,* a final decree nunc pro tunc was upheld because it followed a temporary decree of adoption, which was authorized by statute and properly entered inter vivos. The result in *Nash* would be inappropriate in the instant case

because of both factual and statutory distinctions between that case and the laws of New Mexico.

While an order of adoption may be entered nunc pro tunc to cure irregularities that do not affect the jurisdiction of the court, it cannot serve to bring into existence an adoption when no adoption could in fact be deemed to have existed before. *See Chester v. Graves, supra.* Nor can it be said that the making of an order approving an adoption in this case was to correct an irregularity, an omission in the record of something done but omitted by mistake or inadvertence, or a mere ministerial act.

The Adoption Act, we think, manifests no provisions for the survival of an adoption proceeding after the death of the adoptee, nor does it authorize a posthumous order approving an adoption.

The trial court, under N.M.R. Civ.P. 60(b), N.M.S.A.1978 (Repl.1980), is invested with a reservoir of equitable power to vacate a final order where justice clearly dictates in exceptional circumstances, such as where the court initially lacked jurisdiction. *See Perez v. Perez,* 75 N.M. 656, 409 P.2d 804 (1966). Courts have both the power and duty to correct orders made due to mistake or error and the setting aside of a final judgment upon motion and upon terms as are just is within the sound discretion of the trial court, and an appellate court will interfere with such action only upon showing of an abuse of discretion. *Desjardin v. Albuquerque National Bank,* 93 N.M. 89, 596 P.2d 858 (1979); *see also Phelps Dodge Corp. v. Guerra,* 92 N.M. 47, 582 P.2d 819 (1978); *Heckathorn v. Heckathorn,* 77 N.M. 369, 423 P.2d 410 (Ct.App. 1967). The trial court properly vacated its prior final decree.

Appellees have filed a motion in this court seeking an award of damages on grounds that the appeal herein was frivolous, taken in bad faith, and as a delay tactic contrary to N.M.R.Civ.App.P. 20, N.M.S.A.1978. Even though an appeal lacks merit, it does not necessarily follow that it was not taken in good faith. *Anderson v. Jenkins Construction Co.,* 83 N.M. 47, 487 P.2d 1352 (Ct.App.1971). Moreover, doubts as to the frivolity of an appeal will be resolved in favor of the appellant. *Miller v. Connecticut General Life Insurance Co.,* 84 N.M. 321, 502 P.2d 1011 (Ct.App. 1972). We cannot say that the present appeal was so frivolous or patently taken in bad faith that it warrants imposition of sanctions. Appellees' motion is therefore denied.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

LOPEZ and NEAL, JJ., concur.